## McWILLIAMS BROS., Inc., v. PENNSYLVANIA R. CO.

(District Court, S. D. New York. May 22, 1919.)

1. **Towage** ⊕⇒15(2)—**Evidence held to show navigation past wrecks possible by use of care.**

   In suit for damage to tow running into wrecks, evidence that other tows passed in safety *held* to show that navigation past wrecks, though difficult, was possible by use of ordinary care and skill.

2. **Navigable waters** ⊕⇒24—**Wreck owners liable for failure to buoy wrecks.**

   Wreck owners *held* liable for failure to buoy wrecks, as required by statute, resulting in damage to tow.

3. **Towage** ⊕⇒11(1)—**Deviation from ordinary skill by navigator of tug held negligence.**

   Though tug is bound to no more than ordinary skill and prudence, where standard of skill is very high deviations therefrom by navigator constitute negligence.

4. **Towage** ⊕⇒11(8)—**Known wrecks treated as known, but uncharted, rocks.**

   In determining liability for damage to tow, known wrecks must be treated like known, but unchartered, rocks, and competent navigator is held to duty of keeping his vessel and her tow from running into them; only excuse for failure is vis major.

In Admiralty. Libel by McWilliams Bros., Inc., against the Pennsylvania Railroad Company. Decree for libelant.

Herbert Green, of New York City, for libelant.

Chauncey I. Clark, C. E. Wythe, and Burlingham, Veeder, Masten & Fearey, all of New York City, for respondent.

HOUGH, Circuit Judge. [1] The vital point in this case is that the navigators of the tugs involved were aware of the existence and the general location of the wrecks against which they ran. They knew that it was necessary to keep the loaded tow coming out of South Amboy within the 300-foot dredged channel; they knew that such loaded tows must go out on the ebb tide, and also that such ebb tide tended to set any vessel navigating in the channel, at the point where the wrecks were, toward the wrecks.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The exact dimensions of the wrecks do not appear; their position as located by the evidence seems to me to have been on the upper edge of the channel leaving South Amboy. Assuming that they were even large coal boats, they could not have diminished the channel width by more than 40 feet. As many coal tows passed these wrecks in safety during the winter and early spring of 1918, it must be found that navigation past them was possible, although doubtless difficult and annoying.

[2] The conduct of the wreck owners in not obeying the statute and buoying their property is, of course, indefensible. Under a well-known line of cases in this circuit they are responsible. The Anna M. Fahy, 153 Fed. 866, 83 C. C. A. 48; The Macy, 170 Fed. 930, 96 C. C. A. 146; The Plymouth, 225 Fed. 483, 140 C. C. A. 1. But efforts to bring these owners into present actions have been unsuccessful, and, without any prejudice to the right of the respondent or claimant to contribution or exoneration, the sole question at present before the court is whether, within established doctrine, the errors of judgment, which under very difficult circumstances produced these damages, constitute actionable negligence.

[3] I quite appreciate the argument that a tug is bound to no more than ordinary skill and prudence, and that the tug owner is not responsible for the results of mistakes of judgment on the part of navigators of competent skill. But competency and skill are relative words. When the standard of skill or of competency is very high, deviations therefrom constitute what the law calls negligence. The greater the skill ordinarily found, the more exacting the law becomes.

[4] Viewed in this way, I think known wrecks must be treated like known, but uncharted rocks, and a competent navigator be held to the duty of keeping his vessel and her tow off of that which he knows is a danger on the bottom. The only thing that can excuse a deviation from this rule is vis major, which is not present here. It seems to me that these cases are entirely within The Volunteer, 149 Fed. 723, 79 C. C. A. 429; and The E. L. Levy, 144 Fed. 666, 75 C. C. A. 468.

I attach no importance to the fact that the respondent and claimant endeavored to buoy this wreck, or mark it, and failed. The towing company was under no duty to buoy the wreck at all, under the circumstances shown. But its tug captains were bound to avoid those wrecks, buoys or no buoys, if the ordinary skill and competency of their class rendered such avoidance possible. The rarity of the occurrence complained of shows that ordinary care and skill did ordinarily suffice; therefore the libelant may take a decree in each case, with costs.