(Circuit Court of Appeals, Fifth Circuit. February 20, 1926.)

No. 4629.

Criminal law ⟪⇒1059(2).

Part of charge complained of, not separately excepted to, *held* not properly presented for review.

In Error to District Court of the United States for the Eastern District of Louisiana; Charles R. Beattie, Judge.

Vincent Incardonia was convicted of violating the National Prohibition Act, and he brings error. Affirmed.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

## THE BEAR.

(District Court, E. D. New York. February 11, 1925.)

1. Towage ⟪⇒11(8).

No recovery can be had of a tug for injury to its tow, merely because of taking it through floating ice, soft and broken by tugs.

2. Towage ⟪⇒15(2).

There is no presumption of negligence from injury to tow; but negligence, which was proximate cause, must be proved as pleaded.

3. Towage ⟪⇒15(2)—Tug's negligence in towing barge alongside through ice, instead of at stern on short hawsers, held cause of injury to tow.

Injury to tow, nose of which was broken by floating ice, *held*, under evidence, caused by negligence in attempting to force barge, while alongside, through the ice, instead of towing it at the stern on short hawsers.

Decree affirmed 11 F.(2d) 608.

CAMPBELL, District Judge. The barge Clark Line owned by the libelant, with a load of 960 tons of coal, was on February 23, 1923, towed from Jersey City to Fifty-First or Fifty-Second street, North River, where she was taken in tow by the steam tug Bear, owned by the claimant, to be taken up to Weber & McLoughlin's, at 132d street, North River. The Bear took the Clark Line in tow alongside on the Bear's port side, the bow of the Clark Line extending about 20 feet ahead of the stem of the Bear, and not later than 12:15 o'clock a. m. the Bear started to tow the Clark Line up the river, during which towing she was damaged by ice and sank.

[1] No criticism was directed against the tug for starting out under the existing conditions. The ice was soft, and had been broken up by tugs going in and out. The libelant knew that the charterer of the barge might direct her to be towed to the place where she was bound at the time of the accident, and no recovery can be had simply because of towing through the ice, but negligence on the part of the tug must be shown. The Her-

cules, 213 F. 615, 130 C. C. A. 207; The Bulley (C. C. A.) 266 F. 31.

[2] No presumption of liability arises against the tug because of the sinking of the barge, and in order to recover the libelant must prove that the accident was a direct result of some negligence of towage by the tug (Aldrich v. Pennsylvania R. Co., 255 F. 330, 166 C. C. A. 500; The Lady Wimett (D. C.) 92 F. 399, affd. 99 F. 1004, 40 C. C. A. 212; The W. H. Simpson, 80 F. 153, 25 C. C. A. 318), and that negligence of towage which the libelant must prove is the alleged negligent act complained of in the libel, which it must be shown was the direct and proximate cause of the damage (Eclipse Lighterage & Transportation Co. v. Cornell Steamboat Co., 242 F. 927, 155 C. C. A. 515; The Asbury Park, 147 F. 194, 78 C. C. A. 1; Tague v. Tug W. N. Bavier, 11 F. (2d) 986, opinion of Judge Goddard, United States District Court, Southern District of New York, October 6, 1924).

[3] The question presented is largely one of fact, and the testimony is very conflicting, but the captain of the Clark Line and his wife have much greater reason to remember the occurrences immediately preceding the sinking of the barge than have any of the witnesses who were on the tug. Whatever may be the truth as to the maneuvers of the tug earlier in the towing, I am convinced that shortly before the sinking the tug had the Clark Line in tow alongside, and was attempting to force her through the hard ice, which had become heavier as they proceeded up the river, when her captain called to the deck hands and up to the pilot house, the windows of which were closed, as to why they did not put the boat on hawsers, and that on the third attempt the Clark Line hit the ice and quivered, and her way was stopped. While she was still stuck in the ice, the captain of the barge measured the water in her and found only three inches.

The captain of the barge, at the orders of the man in charge of the tug, took the boat off the side of the tug and put her on two short hawsers, and the tug had just commenced to pull, when the captain of the barge found she was sinking. He took his wife and child forward, attracted the attention of the tug, put them aboard the tug with the assistance of the deckhand, boarded the tug himself, and, the lines being thrown off, the barge sank. The injury was to the bow of the barge, where three planks were stove in, the top being at the water line and two beneath it, and it would take her all of 15 minutes to sink after receiving the injury, and

from the testimony of the barge captain and his wife all that transpired from the time that the barge received the heavy blow from which she sank could have taken place within that time.

The claimant contends that the testimony of the barge captain and his wife should be disregarded, because of alleged inconsistencies; but I do not agree with that contention, but find as many inconsistencies in the testimony of the claimant's witnesses, especially in the fact that the deck hand of the tug contradicts the other witnesses for claimant, and says that at least once the tug, after casting loose from the barge, again picked up the barge alongside while attempting to go through the ice. The method of casting loose the barge, and going ahead by the tug to break the ice, and allowing the barge to drift up with the flood tide, as testified to by the witnesses for the claimant, instead of the tug taking the barge in tow on two short hawsers and towing her through, as the tug broke the ice, seems unusual so far south in the river; but, whatever the method pursued, the injury could only have been occasioned by the barge striking the ice as described by her captain and his wife, unless they both deliberately told an untruth, because within 15 minutes after that time, according to their testimony, they were actively engaged in saving the lives of their child and themselves in escaping from the sinking barge.

I therefore find that the planks in the bow of the Clark Line were broken by the tug bringing her in contact with the ice, while the tug had the barge in tow alongside and was attempting to force her through the ice, instead of having the barge in tow on two short hawsers and the tug breaking the ice, and that the tug was guilty of negligence in so doing, in view of the conditions then existing, which were known or should have been known to the tug. The Bern, 213 F. 630, 130 C. C. A. 294.

A decree may be entered in favor of libelant, with the usual order of reference.