**THE JAMES McCUE. THE P. R. R. NO. 35. O'BOYLE v. CITY OF NEW YORK.**

District Court, S. D. New York. February 3, 1930.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for libelant.

Arthur J. Hilly, Corporation Counsel, of New York City (William J. Leonard and Matthew J. Troy, both of New York City, of counsel), for City of New York.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Stanley R. Wright, of New York City, of counsel), for Pennsylvania R. Co.

WOOLSEY, District Judge. My decision in this case is that the libelant shall recover its damage from the city of New York with costs, and that the libel as against the tug P. R. R. No. 35 shall be dismissed without costs.

At the conclusion of the trial on December 18, 1929, I said that, whilst I was not prepared to decide the liability as between the three parties at that time, I was prepared to state that I believed the story of the libelant's barge captain that he warned the tug's crew against putting him on the south side of pier 48; · that his warning was pointed only to the depth of the water; that. after he was left there, early Sunday morning, he was not able to extricate himself until Monday morning; and that during that period on the low tide on Sunday afternoon he rested on the bottom in such a way as to cause him some damage, notably the breaking of his top log on his port side at a point some 20 feet or so forward of his stern. I think that the actual fact of its breaking was somewhat graphically described by the captain of the barge. Although Mr. Haight, the surveyor, said that, while it was improbable, it was not impossible to have a damage of this kind without having accompanying damage in the members of the structure above the top log, I find that the improbable happened here, and that the libelant's barge was damaged as claimed from resting on a lump on the bottom within the slip near the city's wharf.

The memoranda of law which I requested have been duly submitted by counsel for all three parties, and I have now had an opportunity to consider the application of the cases therein cited to the evidence in this case.

It is necessary now to consider the legal relationship between the parties.

Admittedly the city's relation to the berth in question was that of a wharfinger.

The tug P. R. R. No. 35 was the bailee of the barge James McCue on the trip up to Forty-Ninth street from the Pennsylvania Railroad coal piers. In order to complete its duty as such bailee, it had to make delivery of the barge at a berth apparently safe and in a position apparently secure. Cf. Doherty v. Penn. R. Co. (C. C. A.) 269 F. 959, 962.

Only after the bailee's tug had done this would her liability for her tow be at an end. The question is whether she thus ended her relation to her tow in this case.

The barge was destined to the slip between the Forty-Ninth street and the Forty-Eighth street piers, North River. When she arrived there that slip proved to be full of barges. The tug P. R. R. No. 35 therefore took the barge James McCue to, and left her moored on, the south side of the Forty-Eighth street pier in the slip next below that to which she was destined.

The objection made to the berth by the barge was, as I noted at the end of the trial, pointed to the depth of water and not to the condition of the bottom.

In order to preclude a recovery against the wharfinger in a case of this kind, and to make the tug liable, I think that there must be some sort of scienter of the danger involved—by direct notice or general reputation of the berth—proved against the tug. Ostensibly the berth was safe. The objection of the bargee was not pointed at the danger of an uneven bottom. Cf. The Eastchester (C. C. A.) 20 F.(2d) 357, 358.

The lump which I find caused the damage to the barge was a concealed danger of which the tug was not advised by the bargee and for which the City of New York as wharfinger must be held responsible. The bargee did not know of it, and so is not precluded from recovery.

The city did not call any one to prove that it did not know of the lumpy condition of the bottom where the barge was moored, and it is fair to infer from that that this condition was known to the city. Kirby v. Tallmadge, 160 U. S. 379, 383, 16 S. Ct. 349, 40 L. Ed. 463; Runkle v. Burnham, 153 U. S. 216, 225, 226, 14 S. Ct. 837, 38 L. Ed. 694; Graves v. United States, 150 U. S. 118, 121, 14 S. Ct. 40, 37 L. Ed. 1021; The Eastchester (C. C. A.) 20 F.(2d) 357, 358; The Bolton Castle (C. C. A.) 250 F. 403, 406; The Authentic, 37 F.(2d) 352, 1929 A. M. C. 1734, 1736.

The wharfinger is liable for damage to a vessel due to an uneven bottom at a wharf which it holds out as wharfinger to be a safe place to moor, or in respect of which it does not give warning by posting a notice or otherwise to the vessels which would ordinarily use it. Smith v. Burnett, 173 U. S. 430, 433, 436, 19 S. Ct. 442, 43 L. Ed. 756; Christian v. Van Tassel (D. C.) 12 F. 884, 885; Look v. Portsmouth, K. & Y. St. Ry. (D. C.) 141 F. 182, 185; Hartford & N. Y. Transp. Co. v. Hughes (D. C.) 125 F. 981; The Moorcock, 13 Prob. Div. 157; 14 Prob. Div. 64, 66. Cf. The Calliope [1891] App. Cas. 11.

The dismissal of the libel as against the Pennsylvania Railroad Company will be without costs, for the question of her liability was close.

The case is small, and it is to be hoped that the parties can agree on the damages. If they cannot agree, an interlocutory decree may be entered herein providing for the dismissal of the libel as against the tug P. R. R. No. 35 without costs, and for a reference to assess the damages of the libelant as against the City of New York.